Filed 4/19/16  P. v. Brown CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LANCE BROWN,<br><br>    Defendant and Appellant. | 2d Crim. No. B267126<br>(Super. Ct. No. 2008046598)<br>(Ventura County) |

Lance Brown appeals from a judgment after an order revoking his postrelease community supervision (PRCS).  (Pen. Code, § 3450 et seq.)[1]  He contends the revocation process violated his right to due process because:  he was not provided with counsel at his probable cause hearing before the supervising agency; was not brought before the court for arraignment within 10 days of arrest; did not have a probable cause hearing before the court within 15 days of arrest; a probation officer asked him to waive his rights before the revocation petition was filed; and a probation officer (rather than a judicial officer) served as the probable cause hearing officer.  We affirm.

FACTUAL BACKGROUND

In 2010, Brown was convicted after a plea of guilty to being an accessory after a murder.  (§ 32.)  Brown admitted a prior felony conviction for robbery on behalf

_____

[1] All statutory references are to the Penal Code unless otherwise stated.

of a gang. (§§ 211, 186.22, subd. (b)(1).) The trial court sentenced Brown to a prison term.

Brown was released in 2013 under PRCS following realignment. The Ventura County Probation Department is his supervising agency. As a condition of release, he agreed to be searched without a warrant and not to possess any drug paraphernalia or any knife with a blade longer than two inches. He also agreed the probation department could, without a court hearing, order "flash incarceration" in a county jail for up to 10 days if he violated the conditions of his release. (§ 3453, subd. (q).)

Probation officers searched Brown and his property on July 20, 2015. The officers found a folding knife with a three-inch blade and a marijuana pipe. They arrested him.

Two days after his arrest, Senior Deputy Probation Officer Venessa Meza met with Brown. Meza advised Brown in writing that he had the right to written notice of the alleged violations, the right to an administrative hearing within two days, and the right at that hearing to speak on his own behalf and present letters and documents. Simultaneously, Meza conducted an administrative probable cause hearing, at which Meza concluded there was probable cause to believe that Brown violated the terms of release by possessing the knife and drug paraphernalia, among other things. Brown acknowledged receipt of a "PROS Hold" form that identified the alleged violations. It gave notice of a court hearing set for 17 days after Brown's arrest. Meza advised Brown of his right to a formal revocation hearing at which he would have the right to be represented by an attorney, the right to call and confront witnesses, and the right to testify or remain silent. The advisement was memorialized in a "Postrelease Community Supervision Waivers of Rights and Admission Form." Brown acknowledged receipt of the form and refused to waive his rights.

Nine days after Brown's arrest, the probation department filed a revocation petition. Consistent with the PROS Hold form, the hearing was set for 17 days after Brown's arrest.

2

On the day of the hearing, Brown moved (through counsel) to dismiss the petition for revocation and release him based upon an alleged violation of due process. He argued he was entitled to arraignment before a court within 10 days of arrest and a probable cause hearing before a court within 15 days of arrest.

The trial court denied Brown's motion to dismiss and heard the revocation petition. Brown submitted on the probation officer's report. The trial court found him in violation of PRCS and ordered him to serve a jail sentence.

DISCUSSION

*Statutory Framework for Revocation*

The Legislature created PRCS in 2011 as part of its realignment of the criminal justice system. (§ 3450 et seq. [Postrelease Community Supervision Act of 2011].) PRCS shifts responsibility for postrelease supervision of certain felons from the state Department of Corrections and Rehabilitation to county agencies, such as the Ventura County Probation Department. (*Ibid.*) Conditions of release under PRCS include waiver of the right to any court hearing before imposition of a flash incarceration in jail for up to 10 days. (§ 3453, subd. (q).)

A person under PRCS is subject to arrest without a warrant at the direction of the supervising agency whenever a peace officer has probable cause to believe the person has violated the conditions of release. (§ 3453, subd. (s).) The peace officer may "arrest the person and bring him or her before the supervising county agency." (§ 3455, subd. (b)(1).) The supervising agency may "order appropriate responses to alleged violations," including "intermediate sanctions," such as flash incarceration for up to 10 days. (§ 3454, subd. (b).) If the supervising agency determines that intermediate sanctions are not appropriate, it "shall petition the court pursuant to [s]ection 1203.2 to revoke, modify, or terminate" PRCS. (§ 3455, subd. (a).) "The revocation hearing shall be held within a reasonable time after filing of the revocation petition." (*Id.*, subd. (c).)

*Due Process Requirements*

Revocation of supervised release deprives a person of a conditional liberty interest, and may only be had with due process protections. (*Morrissey v. Brewer* (1972)

408 U.S. 471, 482 (*Morrissey*) [parole revocation]; *People v. Vickers* (1972) 8 Cal.3d 451, 458 (*Vickers*) [probation revocation].)

To conform to due process, revocation of conditional release requires a two-step process:  (1) an initial determination of probable cause to justify temporary detention; and (2) a formal revocation hearing to determine whether the facts warrant revocation.  (*Morrissey*, *supra*, 408 U.S. at p. 485; *Vickers*, *supra*, 8 Cal.3d at p. 456.)

(1) The Probable Cause Hearing

The probable cause determination is a "minimal inquiry," made near the place of arrest "as promptly as convenient after arrest."  (*Morrissey*, *supra*, 408 U.S. at p. 485.)  It need not be made by a judicial officer; it may be made by any qualified person "not directly involved in the case."  (*Id.* at pp. 485-486 [probable cause determination for parole revocation may be made by a parole officer other than the officer who reports the violation or recommends revocation]; *Vickers*, *supra*, 8 Cal.3d at pp. 456-457.)  To conform to due process, the probable cause determination must be preceded by notice of the hearing and the alleged violations, and must provide an opportunity for the supervised person to speak on his own behalf, present evidence, and question adverse witnesses.  (*Morrissey*, at pp. 485-486; *Vickers*, at pp. 456-457.)  The officer who determines probable cause must summarize what occurs at the hearing, but need not make formal findings of fact and law.  (*Morrissey*, at p. 487; *Vickers*, at p. 457.)

Officer Meza conducted a *Morrissey*-compliant administrative probable cause hearing.  Two days after arrest, she gave Brown written notice of the claimed violations and an opportunity to be heard.  Brown "declined to make a statement."  Meza summarized the hearing and set forth her probable cause determination on an "Administrative Probable Cause Hearing" form.  Meza was sufficiently "neutral and detached" to make the determination because she was not "directly involved in the case." (*Morrissey*, *supra*, 408 U.S. at pp. 485-486.)  Another probation officer prepared the report in support of revocation, and other probation officers made the arrest.

Brown was not entitled to counsel at the probable cause hearing because it was a summary proceeding, not a formal proceeding.  (*Vickers*, *supra*, 8 Cal.3d at pp.

4

461-462.)  Under *Vickers*, a probationer is entitled to counsel for "formal proceedings for the revocation of probation," although *Vickers* also states that counsel is required "at all revocation proceedings other than at summary proceedings had while probationer remains at liberty after absconding." (*Id.* at p. 461.)  In *Vickers*, all proceedings were court proceedings following the initiation of a petition to revoke probation in contrast to proceedings before the "supervising agency" during the statutorily authorized "flash incarceration" period.  Moreover, the record reveals that Brown was provided with counsel at the first court proceeding on August 6, 2015.  There is no requirement that counsel be provided at the administrative probable cause hearing.

(2) The Formal Revocation Hearing

The formal revocation hearing is the "final evaluation of any contested relevant facts" to determine whether revocation is warranted, and it must be held "within a reasonable time" after arrest.  (*Morrissey*, *supra*, 408 U.S. at p. 488.)  In *Morrissey*, the court held due process requires these minimum safeguards at a formal parole revocation hearing:  "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." (*Id.* at pp. 488-489.)  In *Vickers*, the California Supreme Court extended equivalent safeguards to probation revocation proceedings, and held that the supervised person is entitled to counsel "at formal proceedings for the revocation of probation, or following such summary revocation in appropriate cases." (*Vickers*, *supra*, 8 Cal.3d at pp. 461-462.)  These safeguards apply in PRCS revocation proceedings.  In enacting a uniform supervision revocation process for probation, PRCS, and parole, the Legislature declared its intent to "simultaneously incorporate the procedural due process protections held to apply to probation revocation procedures under *Morrissey* . . . [,] *Vickers* . . . and their

5

progeny." (Stats. 2012, ch. 43, § 2, subd. (b).)  It is undisputed that the formal revocation hearing complied with *Morrissey* and *Vickers* in this case.

*Williams v. Superior Court Does Not Apply to PRCS Revocations*

In *Williams v. Superior Court* (2014) 230 Cal.App.4th 636 (*William*s), the court applied the *Morrissey* and *Vickers* safeguards to the post-realignment statutory framework for parole revocation.  It concluded that revocation of parole conforms to due process if the parolee is arraigned within 10 days of arrest and afforded a judicial probable cause hearing within 15 days of arrest and a formal revocation hearing within 45 days of arrest.  (*Williams*, at p. 643.)  But its decision was guided by statutes that do not apply to PRCS.  (*Id.* at pp. 657-658, 662; §§ 3000.08, 3044.)  Section 3000.08, subdivision (c) provides that an officer with probable cause to believe "a parolee" is violating a condition of release may arrest the person and "bring him or her before the court."  In contrast, section 3455, subdivision (b)(1) provides that an officer with probable cause to believe a person subject to PRCS is violating a condition of release may arrest the person and "bring him or her before the supervising county agency." Section 3044, subdivision (a)(1) and (2) provides that the "parolee shall be entitled to a probable cause hearing no later than 15 days following his or her arrest for violation of parole," and a formal revocation hearing no later than 45 days after arrest.  There are no corresponding requirements for persons arrested for violation of PRCS.  Section 3455 provides that a person arrested for violating PRCS shall be brought "before the supervising agency," and any petition for revocation must be heard "within a reasonable time."

*Brown Has Failed to Demonstrate Prejudice*

Brown argues that his due process rights were violated in many respects, including those assertions addressed above.  But the underlying problem with his appeal is this:  No matter what due process violation is claimed, he has made no showing of prejudice at the formal revocation hearing, when he was ordered to serve the jail sentence (which he has now served).

The denial of Brown's due process rights, if any, does not warrant reversal unless the violation results in prejudice at the revocation hearing. (*In re La Croix* (1974) 12 Cal.3d 146, 154-155.) But Brown makes no showing that any due process defect prejudiced him or affected the outcome of the PRCS revocation hearing. (*In re Moore* (1975) 45 Cal.App.3d 285, 294; *In re Winn* (1975) 13 Cal.3d 694, 698 [defendant has burden of showing prejudice].) Because he was found in violation and has served the custodial sanction "there is nothing for us to remedy, even if we were disposed to do so." (*Spencer v. Kemna* (1998) 523 U.S. 1, 18.)

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

TANGEMAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

7

David R. Worley, Judge

Superior Court County of Ventura

_____


Jolene Larimore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and Connie H. Kan, Deputy Attorney General, for Plaintiff and Respondent.